480 So.2d 169 (1985)
Gordon R. DI BATTISTO, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-622.
District Court of Appeal of Florida, Third District.
December 17, 1985.
Stephen Cahen, Miami, for appellant.
Jim Smith, Atty. Gen., and Mark J. Berkowitz, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and NESBITT and JORGENSON, JJ.
*170 SCHWARTZ, Chief Judge.
Di Battisto was convicted of grand theft in defrauding an elderly lady, Mrs. Lena Radetzky, of the proceeds of the sale of her home. His primary contention here challenges the admission at trial of the victim's videotaped deposition which had been previously taken to perpetuate her testimony under Florida Rule of Criminal Procedure 3.190(j). We do not agree.
Rule 3.190(j)(6), which governs the present issue, provides that "[n]o deposition shall be used or read in the evidence when the attendance of the witnesses can be procured." As a predicate to the trial judge's ruling on the question, Mrs. Radetzky's treating physician, Dr. Lebow, testified as follows:
THE WITNESS: She was hospitalized approximately a week ago and she was just discharged, I think it was, yesterday or the day before and she was hospitalized because she had an episode of syncope, which is she passed out.
They called the paramedics. Paramedics revived her, took her to the hospital, and essentially I took care of her from there.
* * * * * *
Q. [By State Attorney] Did you reach, did you observe any senility in Mrs. Radetzky?
A. Yes. I did.
Q. Would you please state your opinion as to her mental state right now insofar as that is concerned?
A. It's not a one word answer.
During the hospital stay, she had episodes of confusion consistent with senility. At times she was lucid. At times she was confused.
Basically, she is suffering from organic brain syndrome, which is consistent with senility.
But at times she is very lucid, knows where she is, what time it is, what she is doing.
At periods, she is completely confused and has no idea where she is, what place or anything of her surroundings.
Q. What is organic brain syndrome?
A. Organic brain syndrome is a natural progress of the body or the brain, actually, where it's an aging process consistent with senility.
Q. Do you know her age?
A. 90.
Q. Have you observed any physical disability?
A. Yes. She is blind.
* * * * * *
Q. The question that you have been asked to come to court for as a witness for the Court is, is the mental state of Mrs. Radetzky such that she is qualified to be a witness at a criminal case?
* * * * * *
THE WITNESS: ... Are we referring to right now?
Q. Tomorrow.
A. Okay. She is capable of being here, giving a witness, but there is no way to predict what she is going to do at that time as far as how lucid she will be.
She could be completely confused at that moment or she could have some lucidness and then be fine as far as describing a story or any past events.
Q. If you were to take into account the fact that also there would be a transportation to an alien environment, would that be a factor on predicting her composure?
A. Yes. It would.
Q. What would that be?
A. From what I have seen, any time out of a comfortable environment tends to confuse her, tends to decrease her mental capabilities.
Q. In addition to the change of environment, would there be stress if publicly testifying?
A. Yes. I mean, I would assume so.
Q. Would that be a factor on predicting her mental state if she were testifying?
A. I would say stress would definitely be a factor.
*171 Because the purpose of the rule, see 13 Fla.Jur.2d Courts and Judges § 176 (1979); 49 Fla.Jur.2d Statutes § 154 (1984), is clearly satisfied if the previously deposed witness has become mentally unfit, even if he is capable of being physically transported to the trial, it is apparent that the "attendance of the witness," as the term is used is Rule 3.190(j)(6), means more than mere presence and includes the reasonable likelihood that he is or soon will be able to give reliable, coherent testimony. See § 90.804(1)(d), Fla. Stat. (1983); Fed.R.Evid. 804(a)(4) ("unavailability as a witness" for purposes of admitting hearsay includes "inability to testify because of then existing ... mental illness or infirmity"). On this basis, there was clearly no abuse of the discretion reposed in the trial court as to evidentiary matters of this kind, e.g., Ashley v. State, 370 So.2d 1191 (Fla. 3d DCA 1979), in the determination that, as described by Dr. Lebow, Mrs. Radetzky's condition rendered the introduction of her deposition justified under the rule.[1] See Parrott v. Wilson, 707 F.2d 1262, 1268 (11th Cir.1983) (upholding determination that witness suffering from dementia unavailable under Fed.R.Evid. 804(b)(1); physician testified that witness "could not function in a stressful situation, and that because of [his] confusion and disorientation [the doctor] would not `necessarily trust his memory at any time'."; no significant improvement expected within next six months to year and one-half), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); see generally Pope v. State, 441 So.2d 1073 (Fla. 1983); Palmieri v. State, 411 So.2d 985 (Fla. 3d DCA 1982);[2]McClain v. State, 411 So.2d 316 (Fla. 3d DCA 1982).
The defendant also claims that he was given inadequate opportunity to prepare for cross-examination at the deposition itself.[3] We reject this position in the light of the clear demonstration that all the procedural and constitutional safeguards provided by Rule 3.190(j)(3)  including the presence of the defendant "confronting" the witness[4]  were fully complied with. Cf., Wilson v. State, 479 So.2d 273 (Fla. 2d DCA 1985).
In brief disposition of the remaining points, we find ample evidence to support the guilty verdict and conclude that the claim of ineffectiveness of trial counsel is cognizable only in a subsequent Rule 3.850 proceeding. Stewart v. State, 420 So.2d 862 (Fla. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1802, 76 L.Ed.2d 366, reh. denied, 462 U.S. 1124, 103 S.Ct. 3099, 77 L.Ed.2d 1357 (1983); Whitaker v. State, 433 So.2d 1352 (Fla. 3d DCA 1983); cf. Gordon v. State, 469 So.2d 795 (Fla. 4th DCA 1985).
Affirmed.
NOTES
[1] The defendant does not argue and we do not believe that it is necessary to go as far as to establish that a witness is mentally "incompetent" to testify to permit the use of his deposition pursuant to 3.190(j)(6).
[2] We note that the Sixth Amendment-confrontation concerns expressed in Palmieri as to the necessity of the jury's observation of the witness are ameliorated in this case because the deposition was on videotape.
[3] Consistent with his main contention that Mrs. Radetzky was not shown to have been unable to appear even at the trial, the defendant does not challenge her competency when the deposition was taken. Cf. Parrott v. Wilson, supra, 707 F.2d at 1269 (witness later deemed unavailable for trial as mentally incapable was not shown to have been incompetent when deposed). See also supra note 1.
[4] See supra note 2.